UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
ALLISON PONTE,

        Plaintiff,

-vs-                                **COMPLAINT**

PERRY ELLIS INTERNATIONAL,    **JURY TRIAL DEMANDED**

        Defendant.
------------------------------------------------------X

**06 CV. 1838**

**ROBINSON**

### PARTIES

1. Plaintiff Allison Ponte is a woman residing in Monroe, New York.

2. Defendant Perry Ellis International is a corporation doing business in the State of New York. It may sue and be sued.

### JURISDICTION AND VENUE

3. Since plaintiff brings this action to enforce her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., this Court has jurisdiction over the Federal claims. This Court also has jurisdiction over the Federal claims pursuant to 28 U.S.C. § 1331 and 1343(3) & (4).

4. Since the State law claims arise from the same nucleus of operative facts as the Federal claims, this Court has jurisdiction over them pursuant to 28 U.S.C. § 1367.

5. On March 29, 2005, plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission. As plaintiff received her right to sue letter on February 8, 2006, she properly brings this action in Federal court.

**FACTUAL AVERMENTS**

6. In August 2004, plaintiff began working at the Perry Ellis outlet, a retail store at Woodbury Commons in Orange County. Her supervisor was Michael Long, the store manager.

7. Almost from the start of plaintiff's employment, Long repeatedly made comments about her physical appearance and made it clear he wanted a sexual relationship with her. Plaintiff repeatedly rejected these advances.

8. Over time, Long's behavior became even more intrusive and hostile, culminating in plaintiff's involuntary resignation in January 2005, when it became obvious that the harassment would not stop and she could not take it any longer.

9. For the duration of plaintiff's employment, Long frequently disappeared with his assistant manager, Sabrina Maldanado, leaving plaintiff to run the store.

10. Long regularly spoke about plaintiff's female co-workers, including Maldanado, in a sexual way and said they had had sex in the store and that he wanted to hang her underwear on the wall. Plaintiff also overheard Long tell another female co-worker that he could rape and kill her.

11. Long spoke to plaintiff in the most sexual and disgusting way possible. After plaintiff made it clear to Long that they would never have a sexual relationship, he offered to pay her $500 in exchange for oral sex. Long repeated this offer five or six more times, explaining that this money was like an "extra paycheck."

12. On another occasion, Long said he wanted to smell plaintiff's sneaker while he masturbated. Also, he daily called plaintiff fat and ugly, and he belched and broke

wind in her face at work.

13. Plaintiff routinely told Long that she was offended by his comments and actions. Long told plaintiff that he treated her this way because she did not "put out" and she was not a "Puerto Rican goddess" like the other women in the store. Indeed, Long preferred hiring Puerto Rican woman and called the store "Club Med: Puerto Rico."

14. Long also threatened plaintiff physically. When plaintiff became aggravated that he and Maldanado disappeared for hours away from the store for their apparent sexual escapades, plaintiff said she would call Perry Ellis's corporate offices. Long responded that he had been in the army and described in graphic detail how he could quickly kill plaintiff. When plaintiff said that she told her boyfriend about the harassment, Long said that her boyfriend was scrawny and he could kill him if he wanted to. Long also told plaintiff that he was skilled in eavesdropping and could spy on her at home. Comments like this made plaintiff reasonably and justifiably afraid to report the sexual harassment to defendant's corporate offices.

15. Plaintiff also reasonably feared reporting Long's sexual harassment because he told her that he would tell management that she was an incompetent and unprofessional employee if she did so.

16. In January 2005, plaintiff was out sick for a few days. She did not return to work because the sexual harassment had made her work environment intolerable.

17. The sexual harassment visited upon plaintiff caused her to suffer emotional pain and suffering as well as lost wages and benefits as a result of her involuntary

3

resignation.

## CAUSES OF ACTION

18. Plaintiff incorporates the allegations in ¶¶ 1-17 as if fully restated herein.

19. In subjecting plaintiff to a hostile work environment on account of her gender, defendant violated Title VII of the Civil Rights Act of 1964 and the New York Executive Law.

20. In constructively discharging plaintiff on account of her gender, defendant violated Title VII of the Civil Rights Act of 1964 and the New York Executive Law.

WHEREFORE, plaintiff prays that this Honorable Court:

a. accept jurisdiction over this matter;

b. empanel a jury to fairly hear and decide this matter;

c. award to plaintiff compensatory damages occasioned by the unlawful actions described above;

d. award to plaintiff punitive damages on her Federal claims;

e. award to plaintiff reasonable attorneys' fees and costs expended in litigating this matter; and

f. order such other relief deemed just and proper.

Dated:   March 7, 2006
         Chester, New York

                                              Respectfully submitted,

                                              *[signature]*
                                              STEPHEN BERGSTEIN (6810)

                                              BERGSTEIN & ULLRICH, LLP
                                              15 Railroad Avenue
                                              Chester, New York 10918
                                              (845) 469-1277
                                              Counsel for plaintiff